May it please the Court, my name is Brent Kaslan and this is Samuel Green. We represent the appellant, Ms. Yingchun Zhang, and we respectfully request three minutes so that Mr. Green can make some rebuttal arguments. You may do so, Counsel. Just watch the clock. Will do. Thank you, Your Honor. This case is largely now about credibility, and we think there are only two real credibility questions remaining. The first of those two is Ms. Zhang's alleged failure to put on her asylum application that one of the reasons she converted to Christianity over in China was that her daughter had had an accident. Now, let's first off state the obvious. The asylum application doesn't ask for any reasons for a conversion to Christianity. Nowhere. Secondly, if you identify some of the reasons in your story why you're seeking asylum, the asylum application doesn't say you have to identify all of them. Ms. Zhang merely stated some of the reasons she converted to Christianity, how she was introduced to it. She never promised or swore that those were all the reasons. The BIA, however, in reviewing her case, concluded that because Ms. Zhang was very emotional during her testimony about this specific reason, that being that her daughter was injured and she prayed to God to help her and to help her daughter recover, that there must be something wrong there. If she's so emotional during her testimony, this must be the primary reason, maybe the reason, and thus Ms. Zhang must have been not credible when she completed her application. And there's a couple of important points there. First, that IJ's decision which was being reviewed said this was the reason. That's what the BIA was reviewing, and it's just factually wrong. Throughout the transcript, there's a number of reasons given for Ms. Zhang's conversion to Christianity. Secondly, and I think this is just of critical importance, the reason this has come into play is because of Ms. Zhang's alleged emotion during the second day of her hearing. And in the IJ's decision and then in the BIA's review of that, it's pointed out that this emotion reveals this must be a very important fact. However, if you go back to the first day's transcript on page 161, when this issue comes up for the first time, and Ms. Zhang is asked about her conversion to Christianity, you'll see the word sobbing. You'll see the immigration judge offer a tissue to Ms. Zhang, and you'll see the reporter, excuse me, the interpreter, unable to interpret. She was emotional whenever she talked about her conversion to Christianity, and the fact that she, excuse me, the allegation by the IJ and then the BIA's reliance on the fact that she was only emotional on this point is just factually wrong. I know that the BIA and the IJ are very overworked, and they have a very heavy docket. They have in this case, however, made a very glaring mistake. It is not the only time that she was emotional. She was emotional throughout this. Counsel, what do we make of the Qin case? So I'm about Qin, K-I-N. Are you familiar with it? I am not, Your Honor. If you could just give me a Qin versus Holder. I'm sorry. Is that the Chen case, C-H-E-N? Maybe I'm just noticing it differently. No. No. I'll just tell you what it says. It simply says that, as you indicated, that the admission normally doesn't – is not entitled to much significance. But in a given case, it can find the particular admission to be very significant. In that case, it held that it was significant. So the principle, I've just given you the principle. I think the principle is a fair one. But I think in this case, it's just so clear from the record that the admission is not that important. There's no requirement. And, in fact, when one is completing the asylum application, I'm not even sure there's a hint that there's a requirement that every single reason for one's conversion to Christianity should be listed. That could take pages and pages discussing one's faith and acceptance of God. And I think in this case that while the principle is sound, the application here is not. The second of what we think are two reasons for the determination that Ms. Chen was not credible was the conclusion by the BIA that her escape from China was implausible and inconsistent with her testimony about the persecutions that she had endured there. And we think this falls fairly into the Jay v. Ashcroft case where this court has said it is not appropriate for the BIA to speculate about what authorities in China would or would not do in a certain situation. And here, there's testimony that she was tortured, she was beaten, she was imprisoned. Lots of bad things happened to her. But she was then released and monitored once a week and required to check in. And the local security apparatus would check up on her. However, there's no indication that she was physically prevented from going and trying to get a passport or physically going and trying to get a visa or physically would be stopped when she would eventually make her break to the airport and try and leave the country. The other part of that approach that the BIA relied on was the fact that the husband has not left China. And we think he's in a totally different situation. There's no evidence he wants to leave China. Secondly, there is evidence he has a criminal history in China because of his activities at Tiananmen Square. And he may have given a pulp of even trying. But in any event, he's a different person, different circumstances. And this court has instructed us not to speculate about anyone other than what the, excuse me, not to speculate about what people would do. The testimony in the record is that when Ms. Zhang decided she wanted to leave the country in light of her torture, persecution, she paid 80,000 yuan to some individuals to help her through the process. And they helped her. And the country report is consistent with the fact that there is some corruption in China and that this has happened in the past. To what extent can we look at the IJ's reasons for its adverse credibility? I mean, we think you're not supposed to. Mr. O'Malley is going to make a great argument that you should. But we think you're limited to the BIA's opinion because that BIA, the board, did its own analysis. And that brings us to the third point, which is the corroborating evidence point. The immigration judge did not argue that the lack of a letter or a declaration from Ms. Zhang's husband is a reason for finding her not credible or a reason for denying her asylum application. But the BIA picked up on that fact. It's totally, it's not anywhere to be found in the IJ's decision. And the BIA stated that the lack of that letter, the lack of corroborating evidence, was a factor in its decision. One of its four reasons. One's been abandoned. You have the two credibility issues. And now here in this corroboration issue. But corroborating evidence is not necessary when there's no legitimate reason to question the credibility of an applicant. We think, based on those first two arguments that I not so clearly made, that there is no legitimate reason to question her credibility. Secondly, corroborating evidence is only required when it's easily available. And it is not at all easy for an individual in China who has a history of Tiananmen Square issues and a wife who has fled the country and is under supervision from the local security apparatus to write down a history of persecution and write down a history of torture and try to get that out of the country. That's not at all easy. But I have about two minutes and 30 seconds left. I can preserve that for Mr. Green to rebut. You may do so, counsel. Thank you very much. We'll hear from the government. May it please the Court. My name is Andrew O'Malley. I represent the Attorney General of the United States. The Court should deny the petition for review because substantial evidence in the record supports the agency's determination that Ms. Zhang was not credible and failed to demonstrate that more likely than not she should be tortured and removed to China. The agency provided specific cogent reasons for determining that Ms. Zhang was not credible. Counsel, this is a pre-Real ID Act case, right? That's correct, Your Honor. How does that affect our standard of review? Well, Your Honor, the omissions or inconsistencies that are identified by the agency must go to the heart of the alien's claim, and here they do, specifically the omission of any mention of the accident that her daughter suffered as a reason for her conversion to Christianity in either her asylum application or her direct testimony. And opposing counsel is correct. I am going to argue that the direct testimony is part of that. It was part of the IJ's decision. The Board necessarily relies on the demeanor finding, which necessarily includes the determination based on the omission of any mention of that in the direct testimony. And here she didn't mention it in her direct testimony. She stated that her husband had a gambling problem and he was abusive, and this was the reason for her conversion to Christianity. Wasn't that a question about her introduction to Christianity rather than to her conversion? Isn't there a subtle difference between those? Well, it wasn't. But her story was that that's how she was introduced to God. That's how she became a Christian. There was absolutely no mention of the fact that she converted or the accident to her daughter was a contributing factor. But that came a little later. The conversion came a little later than the introduction, no? The conversion did, Your Honor. It all plays into the same sequence of events as to how she became a Christian. And as the agency determined, given the emotion that she used to testify about this six months after her initial testimony, it was reasonable to assume that she would have included it in her statement attached to her asylum application or her direct testimony. And I guess I'm wondering, does the phrasing of the question matter? I think maybe you're saying it doesn't. But the one question was phrased on how was she introduced to Christianity versus when did she begin to believe in God. Do you think that that's just all the same question and all of that should have been whatever she said in response to one should have been response to the other? I don't believe it's the same question. I believe it's the same sequence of events. You'll notice if you look at her story of how this came about, she mentions that when she's discussing the situation with her husband, her friend Hu Ying came to visit and it was her that told her, well, you need to believe in God and you need to become a Christian during this visit because of the situation with her husband. Well, that's different in the testimony six months later where she says, well, her daughter fell off the play structure and hurt her head. And that's when she told her, you need to believe in God. And she thought, okay, I'll pray and see if this works. And that's how she was introduced to Christianity. But doesn't Lopez-Reyes say that the application doesn't need to be as detailed as her testimony before the BIA? Well, this is her testimony, Your Honor. This is specifically her testimony. And I'll note that, yes, the asylum application does not ask the specific question why did you convert to Christianity. But she included a detailed statement outlining the basis of her claim. And given the fact that this was such a large portion of her claim and that the events that happened to her, while not – I don't mean to say they weren't significant, but there was not a lot that actually happened to her. This was a huge portion of her claim. This goes directly to the heart of her claim as to whether or not she was actually a practicing Christian in China. And, Your Honor – But you say it was a huge portion, but the issue about her daughter didn't even come up until cross-examination. I mean, wasn't it prompted by questions? And it's an emotional experience that I think you might argue that she was reluctant to go into and casual – casually. Well, I think if it was such a huge experience, it was such an important part of her conversion to Christianity, it's reasonable to assume that it would have come out at the beginning as well. And, again, that's not the only basis for the credibility of determination. There is the contradicted and implausible nature of her ability to leave China. Now, this isn't simply speculation as to what the government would do. This is grounded in the record evidence and it's grounded in her own testimony. There's evidence – she claims that she was arrested and detained by the local public security bureau, and that's that very same local public security bureau that she has to go and get a passport from. Now, supposing counsel mentions, as we mentioned in our brief, there is evidence in the record that there is corruption in the system. But if she's able to get a passport by taking advantage of corruption in the system, that doesn't square with the fact that she's still brought to the attention of the public security bureau by doing that. And it certainly doesn't square with the fact that her husband, who was arrested for delivering water to protesters at Tiananmen Square in 1989, cannot take advantage of corruption in the system. Sotomayor, you said it doesn't square with the fact. What proof do we have that it doesn't square up to the fact? Well, Your Honor, it's her own testimony that her husband can't get a passport when she could. It's the evidence in the record that an individual has to go to the local security office to apply for that evidence. And she was able to, despite being under supervision, despite being surveilled, she was able to obtain this passport. She was able to go to the American Consulate's office twice in person to apply for a visa. And, again, the agency's decision doesn't rest on speculation. But that's not implausible, given the fact that she was supposedly surveilled periodically? I mean, she wasn't – somebody wasn't following her every minute of the day, no? That's true, Your Honor. It's sort of a compounding problem, because, again, she was detained by the Public Security Bureau, and yet she went to the Public Security Bureau through – even if she's taken advantage of corruption in the system to get this passport. And then on top of that is the fact that she says it's impossible for her husband to get a passport. But how does her husband even matter? We don't even know he wants to leave. Well, we don't know if he wants to leave. So why – how does that – how can you sort of use that as a basis for saying that she's not credible? It's her statement that it's impossible for him to get a passport. It doesn't matter if he wants to leave or not. It's her claim that he can't do that because of his bad record. Well, she's married to this individual who has a bad record. How is she able to go ahead and get a passport? And given the nature of the implausibility of her testimony, the significant omission, it was reasonable for the agency to require corroboration. And, specifically, a statement from her husband would have been easily available in this situation. He had first-hand knowledge of the major events. He could have corroborated the reasons for her case. Nobody told her that in advance, did they? No one required to, Your Honor. And I know that Petitioner's counsel relies on the Chen line of cases to say that there is a requirement that they receive advance notice of corroborations that's necessary. That's not what Chen says. Chen is dealing with duplicative corroborating evidence. That is, if the immigration judge has received corroborating evidence, can't say, well, you also have to provide this evidence. For example, if she had, she provided statements from pastors in the United States if the immigration judge had said, well, you really need to provide testimony from those pastors. That's what Chen deals with. And, additionally, she was at least on notice that a statement from her husband was important because she was asked about it in her original testimony. But you think it's easy to get the statement? I mean, is that your position, that it's not difficult, that she could have gotten a statement from her husband? We don't know. All we know is that she said in her cross-examination testimony, if the Court would like that, I will do that. She said she would do that. She was willing to do that if it was, if the Court requested it. Now, Petitioner's counsel points out that in her original testimony, she said, well, I'm afraid people are listening on the phone. And basically, I'm afraid people are listening would know. Well, that doesn't square. Again, it highlights the problem in this case, which is that that doesn't make sense in terms of the testimony that she provided six months later, that she would do that. Petitioner's counsel says that this demonstrates that she's willing to take great risk to appease the immigration court. That's speculation, and that's not substantial evidence. It's not compelling evidence. Let me ask you, because the I.J., I believe, held that Zhang's testimony of credible established past persecution and a well-founded fear of persecution, correct? That's what the I.J. found. If she had been credible, she would meet the standard. That's correct. If, let's say, assume that there's an adverse or the BIA's adverse credibility determination is reversed, does that mean that Zhang is eligible for asylum? It does not, Your Honor. And that's a very clever argument, but it's ultimately wrong, mainly because the well-founded fear of persecution, past persecution, well, first of all, that's not an alternative determination that she's eligible for anything. The determination that she may have, that she would have shown past persecution or a well-founded fear of persecution shows that she's a refugee. Asylum is discretionary. The immigration judge still is denied on this matter of discretion. And that standard, the well-founded fear standard, doesn't matter for or doesn't meet the standard for withholding. But don't we apply a presumption that Ms. Zhang is entitled to withholding of removal? That's, as I just said, Your Honor, that well-founded fear standard does not meet the clear probability standard for withholding of removal. So the immigration judge made no finding on that basis. I see I'm out of time, Your Honor. Thank you, counsel. Thank you very much. Mr. Green, I understand you're going to do the rebuttal. May it please the Court. I have just a couple points on rebuttal. I actually want to respond just briefly to something that was just stated by government counsel, and that is with regard to the question about whether the showing as an alternative holding is sufficient if the adverse credibility determination is reversed. And we agree with the government that in terms of eligibility for asylum, that's a discretionary determination. So this Court can hold that she has, in fact, met the standards to met the requirements to be eligible for asylum, but that a remand would be necessary for the BIA to exercise this discretion. But with respect to withholding of removal, because she has demonstrated past persecution, if she is found to be credible, that creates a presumption that she is more likely than not to be persecuted if she returns to China. And because the government presented no evidence to state that there have been changed country conditions, then withholding of removal would have been established if she's found to be credible. Now, going to the question of the mention of her daughter's accident as a reason for her conversion, the questions raised by the Court brought up a number of points that are very relevant, and that is there was an extreme degree of speculation about what Ms. Zhang's emotion meant here. For the IJ and the BIA to determine that the emotion meant that it should have been included in her statement is pure speculation about what the IJ or the BIA themselves would have done had they been filling out the application. It's more likely than not that she actually became emotional because she recalled this image of her 6- or 7-year-old daughter bleeding from the head and felt responsible for that. And in her asylum application, she simply mentioned her husband's gambling issues and issues with abuse. Not — she didn't explicitly say that's why she became a Christian, but she simply gave it as background for how she ended up getting involved in a home church and — which led to the persecution, which is the heart of this matter here. She wasn't trying to explain all the reasons that she became a Christian. And for those reasons, this Court reversed. I just have one question on the CAC claim. What's your position on what should happen to the CAC claim, assuming that you get everything that you — the withholding of removal finding that you're requesting? Does it go back to the BIA for a CAC claim, or do you give that up? If — if withholding of removal were granted, it would be — it would be acceptable to not remand on the Convention Against Torture claim. Acceptable under the law or acceptable because that's — From the perspective of the Petitioner. Okay. I thank the Court. Thank you, counsel. The case just argued will be submitted.
judges: Adelman, O'scannlain, Murguia